## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                )
HENRY G. HEFFERNAN,            )
                                )
           Plaintiff,          )
                                )
      v.                       )
                                )     Civil Action No. 15-2194 (RBW)
ALEX AZAR, in his official capacity as   )
Secretary of the United States Department  )
of Health and Human Services,        )
                                )
          Defendant.       )
_____)

## MEMORANDUM OPINION

The plaintiff, Henry G. Heffernan, initiated this civil action against the defendant, Alex

Azar, in his official capacity as Secretary of the United States Department of Health and Human

Services ("HHS"), alleging multiple violations of the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552 (2018). See generally Complaint ("Compl."). Currently pending before the

Court are (1) the Defendant's Renewed Motion for Summary Judgment ("Def.'s Mot.") and

(2) the Plaintiff's Opposition to Summary Judgment and Cross-Motion for Summary Judgment

("Pl.'s Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes for

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Opposition to Summary Judgment and Cross-Motion for Summary Judgment ("Pl.'s 1st Mot."); (2) the Defendant's Notice of Filing ("Def.'s Not."); (3) the Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Facts"); (4) the Memorandum of Points and Authorities in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Mem."); (5) the Supplemental Declaration of Gorka Garcia-Malene (Oct. 31, 2018) ("1st Garcia-Malene Decl."); (6) the Plaintiff's Memorandum of Points and Authorities in Opposition to Renewed Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment ("Pl.'s Mem."); (7) the Plaintiff's Response to Agency's Statement of Facts ("Pl.'s Resp."); (8) the Plaintiff's Statement of Material Facts ("Pl.'s Facts"); (9) the Memorandum of Points and Authorities in Opposition to Plaintiff's Cross-Motion for Summary Judgment and in Reply to Plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment ("Def.'s Opp'n"); (10) the Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ("Def.'s Resp."); (11) the Supplemental Declaration of Gorka Garcia-Malene (Feb. 27, 2019) ("2d Garcia-Malene Decl."); and (12) the Plaintiff's Reply in Support of Cross-Motion for Summary Judgment ("Pl.'s Reply").

the following reasons that it must grant the defendant's renewed motion for summary judgment

and deny the plaintiff's renewed cross-motion for summary judgment.

## I. BACKGROUND

The Court previously set forth the factual background of this case in its June 27, 2018

Memorandum Opinion, see Heffernan v. Azar, 317 F. Supp. 3d 94, 101–03 (D.D.C. 2018)

(Walton, J.), and therefore will not reiterate it again here. The Court will, however, set forth the

procedural background of this case, which is pertinent to the resolution of the pending motions.

The parties previously filed cross-motions for summary judgment on the plaintiff's

Complaint. See id. at 101. On June 27, 2018, the Court granted in part and denied without

prejudice in part the defendant's motion for summary judgment and denied the plaintiff's

cross-motion for summary judgment. See id. at 134. Relevant to the pending motions, the Court

denied without prejudice the defendant's motion for summary judgment with respect to (1) the

adequacy of "the defendant's searches for the fall 2007 Chief Operating Officer Power[]Point

presentation," id. at 134; (2) the adequacy of "the defendant's searches for . . . John

Poll[a]ck's[2] response to a July 27, 2009 e[]mail," id.; (3) the propriety of the defendant's

"with[olding] [of the] pre-final draft press release," id.; and (4) the propriety of the defendant's

segregability analysis, see id., and granted the motion in all other respects, see id. The Court also

ordered the defendant to "file a renewed motion for summary judgment addressing the

deficiencies in the declarations submitted and the segregability analysis conducted as outlined in

the [Court's June 27, 2018] Memorandum Opinion." Order at 1 (June 27, 2018), ECF No. 39.

In response to the Court's June 27, 2018 decision, the defendant filed his renewed motion

for summary judgment, see generally Def.'s Mot., and the plaintiff filed his renewed

---

[2] John Pollack is the Chief of the Spiritual Ministry Department of the National Institutes of Health ("NIH") Clinical Center. See 1st Garcia-Malene Decl. ¶ 11.

cross-motion for summary judgment, <u>see generally</u> Pl.'s Mot., which are the subjects of this Memorandum Opinion.

## II.    STANDARD OF REVIEW

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a Rule 56 motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. <u>See</u> <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials." <u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 248). Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." <u>Pub. Citizen Health Research Grp. v. Food & Drug Admin.</u>, 185 F.3d 898, 908 (D.C Cir. 1999) (Garland, J., concurring) (alteration in original) (quoting <u>Exxon Corp. v. Fed. Trade Comm'n</u>, 663 F.2d 120, 126–27 (D.C. Cir. 1980)). If the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of h[is] case with respect to which h[e] has the burden of proof," then the moving party is entitled to summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). At bottom, "in ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." <u>Shays v. Fed. Election Comm'n</u>, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001). In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure." Boyd v. Crim. Div. of U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007). The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1988)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt from [disclosure].'" Students Against Genocide, 257 F.3d at 833 (first alteration in original) (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III.    ANALYSIS

The defendant argues that he is entitled to summary judgment because he "has satisfied all of [his] obligations with respect to the [ ] issues" identified in the Court's June 27, 2018 decision. Def.'s Mem. at 2. Specifically, the defendant contends that he has (1) run "[a]dditional searches for documents responsive to the fall 2007 Chief Operating Officer

Power[]Point presentation," id.; (2) run "[a]dditional searches for . . . Poll[a]ck's [r]esponse to a July 27, 2009 email," id.; (3) submitted a supplemental declaration "explain[ing] in greater detail why the draft press release was withheld," id.; and (4) "provide[d] greater information concerning why there is no reasonably segregable information that can be released to [the] plaintiff," id. The plaintiff responds that the defendant "still has been unable to comply with the requirements of [the] FOIA" and that "[t]he Court should order the [defendant] to re-search [his] records, produce the draft press release in full, and release any and all factual information from otherwise redacted materials which has not properly been segregated per [the] FOIA." Pl.'s Mem. at 1.

The Court will address in turn whether the defendant has satisfied each of his remaining obligations previously identified by the Court regarding the plaintiff's FOIA request.

**A.** **Whether the Defendant Adequately Searched for the Fall 2007 Chief Operating Office PowerPoint Presentation**

In its June 27, 2018 decision, the Court found that the defendant's search for the Chief Operating Officer's fall 2007 PowerPoint presentation was not adequate because "the defendant's declarations, taken together, do not provide the Court the minimum information needed for the Court to conclude that the defendant conducted a search 'reasonably calculated to uncover all relevant documents.'" Heffernan, 317 F. Supp. 3d at 113 (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999)). The Court reasoned that "[a]lthough the defendant's declarations sufficiently identify the search terms used, they do not provide the requisite averment that all locations likely to contain responsive documents were searched," id. (citations and internal quotation marks omitted), because "[t]he defendant's declarants simply state[d] that [Maureen] Gormley was the person [ ] most likely [to] have maintained or have access to the [requested PowerPoint] presentation," id. (fifth and sixth alterations in original)

(internal quotation marks omitted), when he was instead "required to submit reasonabl[y] detailed declarations averring that all files likely to contain responsive materials (if such records exist) were searched," id. (internal quotation marks omitted). The Court reserved its ruling as to the adequacy of the defendant's search terms until the defendant filed his renewed motion for summary judgment. See id. at 115 n.13.

The defendant argues that "[f]ollowing this Court's decision, [he] performed another search for records responsive to [the] plaintiff's request for the fall 2007 Chief Operating Officer Power[]Point presentation," Def.'s Mem. at 4 and submitted a declaration "mak[ing] clear that '[a]s a result of these latest searches, all files likely to contain responsive materials, if such records exist, have been searched . . . [,]'" id. (second alteration in original) (quoting 2d Garcia-Malene Decl. ¶ 8). The plaintiff responds that the search performed by the defendant was not adequate because the defendant (1) used compound search terms, i.e., search terms utilizing more than one word, rather than individual search terms, see Pl.'s Mem. at 4; (2) failed to utilize certain search terms in his search, see id. at 5; and (3) "failed to search all reasonable potential custodians and locations for the 2007 Power[]Point [presentation]," id. The Court will address each purported deficiency identified by the plaintiff in turn.

## 1. Use of Compound Search Terms

The plaintiff argues that the defendant's use of compound search terms in his search for the PowerPoint presentation was not reasonable because "[t]he search results [are] necessarily [ ] limited by those records which only contained all words, rather than any such keyword, making this the opposite of a reasonable search." Id. at 4. The defendant responds that "[c]ontrary to [the] plaintiff's claims, a search using compound terms is not prohibited," Def.'s Opp'n at 3, and that "to have searched each word individually, as [the] plaintiff suggests, would have been

absurd," id. at 5, and significantly overinclusive, see, e.g., id. ("For example, in looking for the 2007 [Chief Operating Officer] Power[]Point [presentation], a search was done of 'Fall 2007.' Yet [the] plaintiff seems to suggest that [the] defendant should have searched for 'Fall' by itself, and '2007' by itself . . . . A search of '2007' by itself presumably would have returned every document with the date '2007' in it, regardless of whether it had anything to do with the PowerPoint being sought." (citations omitted)).

Although some courts have found that the use of compound search terms may render an agency search inadequate, see, e.g., Nat'l Day Laborer Organizing Network v. U.S. Immigration & Customs Enf't Agency, 877 F. Supp. 2d 87, 107 (S.D.N.Y. 2012) ("Boolean operators[3] are also consequential: a search for 'secure communities opt-out' may yield no results while a search for ''secure communities' and 'opt-out'' yields ten thousand."); Families for Freedom v. U.S. Customs & Border Prot., 837 F. Supp. 2d 331, 335 (S.D.N.Y. 2011) ("In order to determine adequacy, it is not enough to know the search terms. The method in which they are combined and deployed is central to the inquiry.), "[t]h[ose] requirements . . . exceed those imposed by the 'reasonableness' standard followed in this Circuit," Bigwood v. U.S. Dep't of Def., 132 F. Supp. 3d 124, 141, 142 (D.D.C. 2015) (rejecting the plaintiff's "argu[ment] that the inclusion of compound phrases in a search is generally an ineffective search strategy that can yield incomplete results depending upon the type of search used" and finding that the compound search terms employed by the agency were reasonable (internal quotation marks omitted)). Rather than adopting a blanket rule requiring the defendant to use individual search terms, as the plaintiff would have the Court do, the Court will evaluate the search terms used by the defendant

---

[3] "Boolean operators" or "Boolean connectors" are used as "the words that define the relationships between [ ] [electronic] search terms," such as use of the terms "AND," "AND NOT," and "OR." Boolean Connectors, LexisNexis, http://help.lexisnexis.com/tabula-rasa/publisher/booleanconnectors_ref-reference?lbu=us&locale=en_us&audience=user (last visited Oct. 16, 2019).

in the context of the search for documents responsive to the plaintiff's FOIA request.  In that specific context, the Court finds that the defendant has sufficiently demonstrated why the use of certain compound search terms was appropriate.  See, e.g., 2d Garcia-Malene Decl. ¶ 9 ("deem[ing] other individual search words already used in previous searches, e.g., 'Fall' and '2007' from the previous searches for 'Fall 2007', as too broad and unreasonably burdensome for another round of searches as individually separate terms").  Moreover, in instances where the defendant concluded that the use of compound search terms was not appropriate, he ran additional searches utilizing individual search terms, see id. ¶ 9 ("[The defendant] selected [certain] individual words for an additional round of independent searches in good faith to address [the] [p]laintiff's concern about the use of full names, and because [the defendant] deemed them relatively unique."), evidencing good faith on the part of the defendant, see Heffernan, 317 F. Supp. 3d at 107 ("[T]he [ ] Circuit has held that the performance of additional responses following an agency's initial response to a FOIA request not only does not discredit the original search, but to the contrary, actually indicates good faith and suggest[s] a stronger . . . basis for accepting the integrity of the search." (alterations in original) (internal quotation marks omitted) (quoting Airaj v. United States, Civ. Action No. 15-983 (ESH), 2016 WL 1698260, at *7 (D.D.C. Apr. 27, 2016))).  Accordingly, the Court finds that the defendant's selective use of compound search terms does not render his search for the fall 2007 Chief Operating Officer PowerPoint presentation inadequate.

## 2.     Failure to Utilize Certain Search Terms

The plaintiff argues that the defendant's search for the PowerPoint presentation was also inadequate because "[t]he [defendant] inexplicably failed to include any of the following words in its search: 'NIH, Clinical Center, September Advisory, Advisory Board, Clinical Research,

findings, team, report, or recommendations,'" "despite the fact that this document was presented as a summary of the findings of the Operational Review Team to the [National Institutes of Health ('NIH')] Advisory Board for Clinical Research at its September 21, 2007 meeting." Pl.'s Mem. at 5. The defendant responds that the plaintiff is not entitled to choose the search terms that the defendant must utilize to search for documents responsive to the plaintiff's FOIA request. See Def.'s Mem. at 5.

As the defendant correctly notes, see id.,

a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that [it] believe[s] to be reasonably tailored to uncover documents responsive to the FOIA request. Where the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search.

Bigwood, 132 F. Supp. 3d at 140 (citations and internal quotation marks omitted); see Johnson v. Exec. Office for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) ("[The] FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch."). "Agencies generally have 'discretion in crafting a list of search terms' as long as they are 'reasonably tailored to uncover documents responsive to the FOIA request," Tushnet v. U.S. Immigration & Customs Enf't, 246 F. Supp. 3d 422, 434 (D.D.C. 2017) (quoting Bigwood, 132 F. Supp. 3d at 140–41), and "in responding to a FOIA request, an agency is only held to a standard of reasonableness; as long as this standard is met, [the] [C]ourt need not quibble over every perceived inadequacy in an agency's response, however slight," Physicians for Human Rights v. U.S. Dep't of Def., 675 F. Supp. 2d 149, 164 (D.D.C. 2009).

Accompanying his renewed motion for summary judgment, the defendant provided the Court with a list of the search terms that he used to locate documents responsive to the plaintiff's

request with respect to the PowerPoint presentation, see 1st Garcia-Malene Decl. ¶ 4 (indicating which search terms were used in searching for the PowerPoint presentation), and in response to the plaintiff's opposition to the defendant's renewed motion for summary judgment, he ran additional searches using additional search terms, see 2d Garcia-Malene Decl. ¶ 8 (indicating which additional search terms were used to search for the PowerPoint presentation). After comparing the search terms used and what was sought in the plaintiff's FOIA request, compare Pl.'s 1st Mot., Exhibit ("Ex.") 4 (Letter from Cathy A. Harris to Deshawn Riddick (Mar. 19, 2014)) at 3 ¶ 7 (requesting "PowerPoint slides used by members of the Clinical Center in a presentation to employees in the Department of Spiritual Ministry in approximately September 2007 regarding the [ ] Advisory Board meeting"), and the supplement to his FOIA request, see id., Ex. 12 (Letter from Juliette Niehuss and Cathy A. Harris to Marina Utgoff Braswell (Sept. 9, 2016)) at 2 ¶ 1 (requesting production of "[t]he Chief Operating Officer's [P]ower[][P]oint presentation on the [o]perational review, presented to the Department's chaplains approximately a week or so after the September [Advisory Board for Clinical Research] meeting, in which the findings of the Operational Review Team's report were presented, and the Clinical Center Director's decisions on implementing certain recommendations of the Review Team"), with 1st Garcia-Malene Decl. ¶ 4 (regarding the PowerPoint presentation, "using [the] individual keywords 'Dominic Ashkar', 'Diana Gomez de Molina', 'Dana Kelley', 'Owen Fitzgerald', [']Spiritual Ministry', 'Operational Review', 'Fall 2007', 'Spiritual Ministry Operational Review', 'Maureen Gormley', 'Staff assigned departments', 'Walter Jones', and 'Staff meetings'"), and 2d Garcia-Malene Decl. ¶ 8 (regarding the PowerPoint presentation, using the additional search terms "'Ashkar', 'Gomez', 'de Molina', and 'Gormley'"), the Court concludes that the "[d]efendant[] properly exercised [his] discretion in crafting [a] list[] of search terms that

[he] believed to be reasonably tailored to uncover documents responsive to the FOIA request."
Physicians for Human Rights, 675 F. Supp. 2d at 164.  Moreover, the defendant has explained
why the use of other search terms suggested by the plaintiff is not reasonable.  See 2d Garcia-
Malene Decl. ¶ 10 (explaining that search terms suggested by the plaintiff, "such as 'NIH',
'Clinical Center', 'team', 'Power Point' [sic], and 'September[,]'" "particularly when carried out
by the NIH Clinical Center in an agency that carries out the vast majority of its work on
Microsoft programs like PowerPoint, are simply so broad as to not inform a reasonable search
for responsive records" (first alteration in original)).  Accordingly, because "the [defendant's]
search terms are reasonable, the Court will not second guess the [defendant] regarding whether
other search terms might have been superior," Tushnet, 246 F. Supp. 3d at 434 (quoting
Liberation Newspaper v. U.S. Dep't of State, 80 F. Supp. 3d 137, 146 (D.D.C. 2015)), and finds
that the defendant's failure to utilize certain search terms proposed by the plaintiff does not
render the defendant's search for the fall 2007 Chief Operating Officer PowerPoint presentation
inadequate, see Physicians for Human Rights, 675 F. Supp. 2d at 164 (finding "no support for the
proposition that a FOIA claimant can dictate the search terms to be used as the benchmark for
determining whether an agency's search is reasonable" (internal quotation marks omitted)).

> **3.**      **Failure to Search All Reasonable Potential Custodians**

The plaintiff further argues that the defendant's search for the PowerPoint presentation
was inadequate because the defendant "failed to search all reasonable potential custodians and
locations for the 2007 Power[]Point presentation."  Pl.'s Mem. at 5.  Specifically, the plaintiff
argues that the defendant never searched the files of the following three individuals who were
purportedly involved in the Spiritual Ministry Department operational review: (1) Dr. John
Gallin, the NIH Clinical Director; (2) Dr. Howard Gadlin, the NIH Ombudsman; and (3) Dr.

Lawrence A. Tabak, "an official in the NIH Director's Office who[] . . . served as a liason between NIH and HHS headquarters concerning the status of the [Spiritual Ministry Department] review." Id. at 6–7. The plaintiff argues that the defendant "should be required to identify exactly which custodians and locations have been searched for th[e] 2007 Power[]Point presentation, aside from [ ] Gormley's, and to identify whether [ ] Gallin's, [ ] Gadlin's, and [ ] Tabak's files were or were not similarly searched." Id. at 7–8. The defendant responds that "numerous, repeated, detailed, expansive searches have been conducted for responsive records" and "[n]othing more should be required." Def.'s Opp'n at 9.

As to this aspect of the defendant's search for responsive records, the defendant has complied with the plaintiff's request to "identify exactly which custodians and locations have been searched for th[e] 2007 Power[]Point presentation." Pl.'s Mem. at 7; see 2d Garcia-Malene Decl. ¶ 16 (identifying the custodians and types of files searched in an attempt to locate the PowerPoint presentation). Additionally, the defendant has complied with the plaintiff's request to "identify whether [ ] Gallin's, [ ] Gadlin's, and [ ] Tabak's files were or were not similarly searched." Pl.'s Mem. at 7–8. As to the Gallin and Tabak files, the defendant searched both of those files, but failed to locate the PowerPoint presentation in either file. See 2d Garcia-Malene Decl. ¶¶ 14–15 (explaining that "in response to [the] [p]laintiff's [o]pposition to [s]ummary [j]udgment, [the defendant] conducted a search of . . . Gallin's and . . . Tabak's records," but that "[t]his search of [ ] Tabak's and [ ] Gallin's records, conducted on February 22, 2019, yielded no results").

As to the Gadlin files, as the Court previously explained, "[t]here is no requirement that an agency[] search every record system in response to a FOIA request; rather, it may limit its search to only those locations where responsive documents likely are maintained." Heffernan,

317 F. Supp. 3d at 104–05; see Porter v. Cent. Intelligence Agency, 778 F. Supp. 2d 60, 69 (D.D.C. 2011) (same). The defendant argues that, while he did not search the Gadlin files, no search was necessary because "Gadlin was not a likely custodian." Def.'s Opp'n at 7; see 2d Garcia-Malene Decl. ¶ 13 ("Gadlin was not a likely custodian of the PowerPoint [presentation] simply because he was listed as associated with the [Operational Review Team] review. According to [the plaintiff']s declaration . . . , the PowerPoint [presentation] at issue was used in a meeting of staff chaplains. [ ] Gadlin was not a staff chaplain, so there was no reason to search his records for this document."). Based on this representation, the Court concludes that the defendant properly "limit[ed] [his] search to only those locations where responsive documents likely are maintained." Heffernan, 317 F. Supp. 3d at 104–05. Accordingly, the Court finds that the defendant properly searched the files of all potential custodians who reasonably could have possessed the PowerPoint presentation.

Accordingly, the Court finds that the defendant's renewed search for the PowerPoint presentation was reasonable.

**B.  Whether the Defendant Adequately Searched for John Pollack's Response to a July 27, 2009 Email**

In its prior June 27, 2018 decision, the Court concluded that the defendant's search for emails relating to Pollack's response to a July 27, 2009 email was not adequate because "the defendant's descriptions regarding its search efforts for Pollack's response to the July 27, 2009 e[]mail 'do[] not contain sufficient information for the [C]ourt to assess whether the [defendant] conducted a search reasonably calculated to uncover all responsive records.'" Id. at 114 (second, third, and fourth alterations in original) (quoting Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation, 235 F. Supp. 3d 207, 213 (D.D.C. 2017)). The Court found that

> [t]he deficiency result[ed] primarily from the defendant's declarations' failure to aver[] that all locations likely to contain responsive records were searched, let alone any explanation of why the individuals selected or the databases searched were likely to lead to uncovering all responsive documents. Moreover, although the defendant's declarations identif[ied] the search terms and databases searched, they d[id] not offer any explanation as to why the same search terms were not utilized for each of the defendant's searches concerning Pollack's response. And the fact that Pollack was able to able to locate responsive documents using one individual keyword term for his electronic search[] cause[d] the Court to second guess whether the use of the other search terms used by [Maria] Joyce and [Rachel] Schacherer would lead to Pollack locating additional responsive documents.

Id. at 115 (third alteration in original) (citations and internal quotation marks omitted).

The plaintiff argues that the defendant's "new search for the 2009 Pollack response still remains inadequate" because "[i]f, as with the 2007 Power[]Point search, [the defendant] searched compound word phases, rather than each individual word separately[] (or with 'AND' or 'OR' modifiers)[,] then this was not an adequate search," and because "[i]t is [ ] unclear whether the files of Dana Kelley, [ ] Pollack's assistant, were similarly searched for the Pollack response to the July 27, 2009 email concerning the proposed Action Pla[]n in response to the [Operational Review Team] report." Pl.'s Mem. at 8. The defendant again responds that "the use of compound search terms was entirely appropriate," Def.'s Opp'n at 9, and that the second declaration submitted by the defendant in support of his renewed motion for summary judgment "makes clear that [ ] Kell[e]y's paper and electronic files were searched for responsive records," id. at 10.

As to the plaintiff's argument that the use of compound search terms renders the defendant's search for Pollack's response to a July 27, 2009 email inadequate, the Court has already explained why the use of compound search terms does not necessarily render a search inadequate. See Part III.A.1, supra. The plaintiff disputes only the use of compound search terms generally, rather than the specific search terms themselves, cf. Pl.'s Mem. at 8 (disputing

the search terms used by the defendant to the extent that the defendant "searched compound

word phases, rather than <u>each individual word separately</u>").  Accordingly, because the Court

finds that in the context of the circumstances in this case, the use of the compound search terms

was appropriate, the Court finds that the search terms used by the defendant, <u>see</u> 1st Garcia-

Malene Decl. ¶ 14 ("using the following individual keywords: SMD, Spiritual Ministry, Pollack,

Gormley, 2009, Operational Review response, Operation review Action Plan[,] and SMD

Ministry"), were reasonable.  And, as to the plaintiff's argument that Kelley's paper files were

not searched, as the defendant correctly points out, <u>see</u> Def.'s Opp'n at 10, the second

declaration submitted by the defendant in support of his renewed motion for summary judgment

states that "Kelley in 2018 searched her records—those on paper and in electronic format[—]for

the [ ] Pollack response," 2d Garcia-Malene Decl. ¶ 26.  Moreover, as to the Court's concerns

about the defendant's prior failure to "expla[in] [ ] why the individuals selected or the databases

searched were likely to lead to uncovering all responsive documents," and "why the same search

terms were not utilized for each of the defendant's searches concerning Pollack's response,"

<u>Heffernan</u>, 317 F. Supp. 3d at 115, the Court is satisfied that its prior concerns have now been

addressed, <u>see</u> 2d Garcia-Malene Decl. ¶ 19 (in response to the Court's concern regarding the

defendant's failure to explain why certain custodians were selected to conduct searches,

"clarify[ing] why [ ] Pollack, [ ] Joyce, and [ ] Schacherer were asked to conduct searches); <u>id.</u>

¶ 23 (in response to the Court's concern that "the same search terms were not used when [ ]

Pollack searched his files as those used by [ ] Joyce and [ ] Schacherer," "ask[ing] [ ] Pollack to

search his files again for any records that would be considered responsive" using the same search

terms used by Joyce and Schacherer).

Accordingly, the Court concludes that the defendant's search for Pollack's response to a July 27, 2009 email was adequate.

## C.     Whether the Defendant Properly Withheld the Draft Press Release

In its June 27, 2018 decision, the Court concluded that the defendant's invocation of Exemption 5 of the FOIA regarding his withholding in full of a pre-final draft press release concerning the 2007 operational review of the Spiritual Ministry Department did not withstand scrutiny because "although the pre-final draft press release was crafted before the operational review and therefore would be pre-decisional, the defendant's descriptions of this document are too obscure for the Court to determine its deliberative aspect." Heffernan, 317 F. Supp. 3d at 126. The Court took issue with the defendant's invocation of the deliberative process privilege in regard to the draft press release because "[t]here [was] no indication as to what deliberative process the withheld pre-final draft press release concerned or its role in the formulation of policies or recommendations for policy change undertaken by the 2007 operational review," id., and "the defendant ha[d] not . . . indicated whether it was used by the [Spiritual Ministry Department] in its dealings with the public," id. at 127.

The defendant argues that the first declaration submitted in support of his renewed motion for summary judgment "amply demonstrates how release of this draft press release would harm the agency's decision-making process on whether to issue a press release about specific contemplated agency action" and "[t]herefore, this document was properly withheld under Exemption 5." Def.'s Mem. at 9. The plaintiff responds that the deliberative process privilege is not applicable because "[John] Finan[4] was . . . a non-government individual at the time [ ]

_____

[4] Finan "was President of the Franciscan Missionaries of Our Lady Health System . . . at the time [ ] Gallin emailed him the draft [press] release on April 27, 2008." Pl.'s Facts ¶ 23; Def.'s Resp. ¶ 23 (not disputing Finan's position).

Gallin emailed him the draft release on April 27, 2008," and "if any deliberative process privilege could arguably apply to the draft release, the [defendant] waived it on April 28, 2007[,] when [ ] Gallin sent the draft to [ ] Finan." Pl.'s Mem. at 10 n.2. Alternatively, the plaintiff argues that even if the deliberative process privilege is applicable, "the Exemption 5 privilege cannot apply to a draft press release not related to any policy change," id. at 11, and the defendant should be required to "produce all 'factual information' contained in the draft release," id. at 12, because he "ha[s] failed to identify the function and significance of any such factual information that has been withheld on the grounds of [the] deliberative process privilege," id. at 13 (internal quotation marks omitted).

The Court first addresses whether the deliberative process privilege is applicable. As previously stated, the plaintiff argues that the defendant waived his ability to invoke the deliberative process privilege by sending the draft press release to Finan before Finan was officially retained as a consultant by the agency. See Pl.'s Mem. at 10 n.2; Pl.'s Reply at 7–8. The defendant responds that "the transmission of the draft press release to [ ] Finan fits within Exemption 5's threshold," Def.'s Opp'n at 11, because "[u]nder the consultant corollary, records exchanged between an agency and its consultant that are part of a decision-making process qualify as inter-agency records for purposes of Exemption 5," id. at 10–11.

> [U]nder what has become known as the "consultant corollary," records exchanged between an agency and outside consultants qualify as "intra-agency" for purposes of Exemption 5 if (1) the agency solicited the records from the non-agency party or there exists "some indicia of a consultant relationship between the outsider and the agency," and (2) the records were "created for the purpose of aiding the agency's deliberative process."

Judicial Watch, Inc. v. U.S. Dep't of State, 306 F. Supp. 3d 97, 106–07 (D.D.C. 2018) (citation omitted) (first quoting Nat'l Inst. of Military Justice v. U.S. Dep't of Def., 512 F.3d 677, 686–87 (D.C. Cir. 2018); then quoting Pub. Citizen, Inc. v. Dep't of Justice, 111 F.3d 168, 170 (D.C. Cir.

1997)).  Here, the "indicia of consultant relationship" between Finan and the defendant is evidenced by Gallin's April 27, 2008 email to Finan "affirmatively solicit[ing] [Finan's] advice in aid of agency business."  Nat'l Inst. of Military Justice, 512 F.3d 677 at 686; see Pl.'s Mot., Ex. 6 (Email from John Gallin to John Finan (Apr. 28, 2007) ("Gallin Email")) ("I am writing to see if we could get your help with a difficult issue that has emerged at the Clinical Center.").  The facts that, according to the plaintiff, "there was no discussion of [ ] Finan becoming a 'consultant' for the [Operational Review Team] until May 3, 2007" and "Finan was not [ ] provided with any paperwork to become a 'Special Government Expert' [ ] until June 18, 2007," Pl.'s Reply at 8, do not undercut the indicia of a consultant relationship, see Nat'l Inst. of Military Justice, 512 F.3d at 687 (holding that "[i]t was [the agency's] solicitation of [the consultants'] advice (with or without nominal pay or title) that created a consultant relationship and made them analogous to agency employees").  Moreover, the draft press release "w[as] created for the purpose of aiding the [defendant's] deliberative process."  Judicial Watch, 306 F. Supp. 3d at 107; see Pl.'s Mot., Ex. 6 (Gallin Email) ("Below [is] . . . a draft press release I was asked to prepare for the Office of the Director[.]").  Accordingly, the Court concludes that the consultant corollary is applicable and that the defendant did not waive his right to assert the applicability of the deliberative process privilege to the draft press release by sending the draft release to Finan.

The Court next turns to whether the draft press release was properly withheld pursuant to the deliberative process privilege.

> Th[e] [deliberative process] privilege encompasses documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, as well as other subjective documents that reflect the personal opinions of the writer prior to the agency's adoption of a policy.  To withhold a responsive document under the deliberative process privilege, the agency must demonstrate that the document is

18

both pre[-]decisional and deliberative. A communication is pre[-]decisional if it was generated before the adoption of an agency policy and it is deliberative if it reflects the give-and-take of the consultative process.

Mayer, Brown, Rowe & Maw LLP v. Internal Revenue Serv., 537 F. Supp. 2d 128, 134 (D.D.C. 2008) (citations and internal quotation marks omitted).

Here, the Court has already concluded that the draft press release was pre-decisional, see Heffernan, 317 F. Supp. 3d at 126, and therefore need only to address now whether the draft press release was also part of the deliberative process. As the plaintiff correctly notes, cf. Pl.'s Mem. at 10, the defendant contends that two separate agency policies were being considered, see Def.'s Opp'n at 13 ("At a minimum there was a policy being considered as to whether to issue a press release in connection with the review that was being proposed. And a policy was being considered as to whether to conduct a department review itself." (citation omitted)).

The Court finds that the draft press release was deliberative with respect to the policy decision regarding whether to issue a press release concerning the operational department reviews. The plaintiff cites the Mayer, Brown case as support for the proposition that "the Exemption 5 privilege cannot apply to a draft press release not related to any policy change." Pl.'s Mem. at 11 (citing Mayer, Brown, 537 F. Supp. 2d at 138–39). However, the Court agrees with the defendant that the "[p]laintiff's reliance on Mayer, Brown . . . is misplaced." Def.'s Opp'n at 13. Although the court in Mayer, Brown concluded that the draft press releases "did not bear on the policy formulation involved with [the sale in/lease out]," its conclusion was premised on the fact that a final press release was adopted and issued. Mayer, Brown, 537 F. Supp. 2d at 139 (concluding that the portion of the draft press release that was similar to the final press release issued was "not subject to Exemption 5, because it was used in interactions with the public"); see Ford Motor Co. v. United States, 94 Fed. Cl. 211, 223 (2010) (rejecting the

plaintiff's argument that "press releases have no relation to a policy decision and drafts of such releases are not pre-decisional, relying on Mayer, Brown," reasoning that "Mayer[,] Brown narrowly focused on the fact that the draft press releases at issue there did not implicate a policy decision"). Thus, Mayer, Brown does not, as the plaintiff suggests, stand for the proposition that all draft press releases are not protected by the deliberative process privilege; rather, it instructs only that draft press releases that are similar to a final press release ultimately issued by an agency are not covered by the deliberative process privilege.

Moreover, "discussions regarding how to present an agency decision to the public [are] covered by the deliberative process privilege." Ford, 94 Fed. Cl. at 223 (collecting cases); see ICM Registry, LLC v. U.S. Dep't of Commerce, 538 F. Supp. 2d 130, 136 (D.D.C. 2008) ("[D]eliberations regarding public relations policy are deliberations about policy, even if they involve 'massaging' the agency's public image."); Sierra Club v. U.S. Dep't of Interior, 384 F. Supp. 2d 1, 22 (D.D.C. 2004) ("[The agency] asserts that this document shows the development of the [agency's] policy regarding how to present its positions on [the] [Arctic National Wildlife Refuge], and, as a draft, is pre[-]decisional to the [agency's] final positions. The Court agrees." (internal quotation marks omitted)); Judicial Watch, Inc. v. Reno, Civ. Action No. 00-0723 (JR), 2001 WL 1902811, at *3 (D.D.C. Mar. 30, 2001) (explaining that deliberations regarding "how to handle press inquiries and other public relations issues" are covered by the deliberative process privilege); Ford, 94 Fed. Cl. at 224 ("Because the draft press releases and related correspondence are pre-decisional to the November 23, 2004 press release and reflect recommendations concerning policy, they are protected by the deliberative process privilege."). Here, the defendant's declarant makes clear that the draft press release was never adopted, see 2d Garcia-Malene Decl. ¶ 30 (describing the efforts taken by the defendant to determine whether a

final press release was ever issued and representing that "there is no evidence that the draft press release was ever adopted formally or used by the agency in its dealings with the public, and the available evidence indicates that it was not"), and it relates to the defendant's policy consideration of whether to issue a press release on the subject of the operational department reviews, see id. ¶ 31 ("There was debate within the agency as to whether a press release should be issued in connection with department reviews, and this department review in particular."). Therefore, the Court concludes that the draft press release is covered by the deliberative process privilege.[5]

Having determined that the deliberative process applies to the draft press release, the Court next turns to whether the defendant must produce the factual information contained in the draft press release. The plaintiff argues that the defendant "has [ ] failed to sufficiently explain th[e] function and significance" of the factual information contained in the draft press release that has been withheld. Pl.'s Mem. at 13. The defendant responds that

> the factual information in the draft press release involved factual material assembled in the judgment of the author as to what facts might be pertinent to a possible departmental review, and which facts should be disclosed to the public in a press release if the review were to be authorized, were the draft press release to be issued,

and that "[t]he judgment involved in collecting the facts to be put in a suggested press release involves the very kind of deliberations that Exemption 5 is intended to protect." Def.'s Opp'n at 15.

> In general, factual material is not exempt under the deliberative process privilege, but factual material may be withheld if its disclosure would expose the deliberative process. Factual material is more likely to reveal the decisionmaking process of the agency when the author of the record exercised judgment in selecting what facts

_____
[5] Because the Court has concluded that the draft press release reflects recommendations regarding the policy decision about whether to issue a press release on the operational department reviews, the Court need not address whether the draft press release also reflects recommendations as to the policy decision regarding whether to conduct operational department reviews.

to include.  In contrast, factual portions that are mere mechanical recitations[] . . .
are generally not exempt because they do not reveal the agency's decisionmaking
process.

Bayala v. U.S. Dep't of Homeland Sec., 264 F. Supp. 3d 165, 175 (D.D.C. 2017) (citations and

internal quotation marks omitted).  "[T]he legitimacy of withholding does not turn on whether

the material is purely factual in nature or whether it is already in the public domain, but rather on

whether the selection or organization of facts is part of an agency's deliberative process."

Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011); see

Mapother v. U.S. Dep't of Justice, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (concluding that the

factual information contained in large portions of a report was properly withheld because "the

majority of the [ ] [r]eport's factual information was assembled through an exercise of judgment

in extracting pertinent material from a vast number of documents for the benefit of an official

called upon to take discretionary action"); cf. id. at 1540 (concluding that the factual information

contained in the chronology section of a report was not properly withheld because it "reflect[ed]

no point of view" because it was "organized strictly chronologically, not thematically").

Here, the defendant's declarant makes clear that the factual material contained in the draft

press release "reflect[s] [the defendant's] preliminary positions or ruminations about how to

exercise discretion" regarding whether and how to present the information regarding the

operational department review to the public.  Petroleum Info. Corp. v. U.S. Dep't of Interior, 976

F.2d 1429, 1435 (D.C. Cir. 1992); see 2d Garcia-Malene Decl. ¶ 31 ("The facts were selected for

the press release from a larger set of facts and their inclusion in the draft press release

represented the judgment of what the author thought might be included in a press release to the

public.  There was debate within the agency as to whether a press release should be issued in

connection with department reviews, and this department review in particular.").  Because the

factual information contained in the draft press release "was assembled through an exercise of judgment," Mapother, 3 F.3d at 1539, and "reflects [a] point of view," id. at 1540, the Court concludes that the factual information contained in the draft press release is properly withheld pursuant to Exemption 5.

Accordingly, the Court concludes that the defendant properly withheld the draft press release in full.

**D.      Whether the Defendant Conducted a Proper Segregability Analysis**

In its June 27, 2018 decision, the Court concluded that the defendant's "representations [were] not sufficient to discharge the defendant's segregability obligations because they d[id] not provide the Court with the minimum information needed, particularly whether 'the [defendant] conducted a line-by-line review of the [withheld information] to ensure that that it contained no segregable, nonexempt information.'" Heffernan, 317 F. Supp. 3d at 133 (quoting Anguimate v. U.S. Dep't of Homeland Sec., 918 F. Supp. 2d 13, 22 (D.D.C. 2013) (Walton, J.)).

The defendant argues that the declarations he submitted in support of his renewed motion for summary judgment "amply satisfy [the] defendant's duty to demonstrate that an adequate segregability analysis was performed with respect to all of the withheld information, and that no further reasonably segregable information can be released," Def.'s Opp'n at 18, because they make clear that "[the defendant] conducted a line-by-line review of 'every page reviewed', and of 'all of the withheld information to ensure that it contained no segregable, nonexempt information,'" id. at 17 (quoting 2d Garcia-Malene Decl. ¶¶ 32–33). The plaintiff responds that "[t]he [defendant's] blanket claim that [he] reviewed 'all withheld information' does not satisfy [his] requirement to provide 'meaningful explanations' of [his] segregability assessment for specific withheld documents," Pl.'s Reply at 13, and that "[i]t cannot be sufficient to simply

parrot the Court's prior [O]rder and cases by belatedly claiming a 'line by line' review," id. at

14.

> Under the FOIA, the Court must determine whether agency records have been
> properly withheld de novo . . . . [T]he FOIA requires that [a]ny reasonably
> segregable portion of a record shall be provided to any person requesting such
> record after deletion of the portions which are exempt under this subsection.  [I]t
> has long been the rule in this Circuit that nonexempt portions of a document must
> be disclosed unless they are inextricably intertwined with exempt portions.  The
> agency must provide a detailed justification and not just conclusory statements to
> demonstrate that all reasonably segregable information has been released.
> Agencies are entitled to a presumption that they complied with the obligation to
> disclose reasonably segregable material, which must be overcome by some
> quantum of evidence by the requester.

Gatore v. U.S. Dep't of Homeland Sec., 292 F. Supp. 3d 486, 491 (D.D.C. 2018) (Walton, J.)

(third and fourth alterations in original) (citations and internal quotation marks omitted).

"Generally, it appears that agencies may satisfy their segregability obligations if they provide a

sufficiently detailed Vaughn index that describes the documents withheld and why, and if the

agency also submits a declaration attesting that all segregable information has been released."

Stein v. U.S. Secs. & Exchange Comm'n, 266 F. Supp. 3d 326, 353 (D.D.C. 2017).  "[F]or each

entry the defendant is required to specify in detail which portions of the document are

disclosable and which are allegedly exempt."  Beltranena v. Clinton, 770 F. Supp. 2d 175, 186

(D.D.C. 2011) (alteration in original).

Here, the defendant previously provided a Vaughn index listing the withholdings

challenged by the plaintiff.  See generally Def.'s Not., Ex. 3 (Third Index of Challenged

Withholdings ("Vaughn Index")).  The defendant has also "submit[ted] a declaration attesting

that all segregable information has been released."  Stein, 266 F. Supp. 3d at 353; see 2d Garcia-

Malene Decl. ¶ 33 ("With respect to all of the information withheld, every page containing

withheld information was reviewed line-by-line and no reasonably segregable, nonexempt

24

information was withheld from [the] [p]laintiff.").  Viewing the <u>Vaughn</u> index and the

declaration together, <u>see</u> <u>People for the Am. Way Found. v. Nat'l Park Serv.</u>, 503 F. Supp. 2d

284, 296 (D.D.C. 2007) (reviewing both the agency declaration and the <u>Vaughn</u> index to

determine whether the agency's "segregability analysis was legally sufficient"), it is plain to the

Court that the defendant has met his segregability obligations regarding the 121 pages that

included partial redactions.  <u>See generally</u> Def.'s Not., Ex. 3 (<u>Vaughn</u> Index).  As to these pages,

in addition to the defendant's declaration attesting that all segregable information has been

released, <u>see</u> 2d Garcia-Malene Decl. ¶ 33, the defendant also provided in his <u>Vaughn</u> index a

detailed description of the factual information in those pages that was withheld, <u>see, e.g.</u>, Def.'s

Not., Ex. 3 (<u>Vaughn</u> Index) at 2 (indicating that the "[h]ome and personal cell phone number; the

name of [ ] Gallin's wife, who was not involved in the substance of the email or a recipient of

it[]; [and] [c]onfidential information contained in employee personnel files relating to an adverse

employment action" were redacted or withheld), which allows the Court to conclude that the

defendant has met his segregability obligations regarding these pages.

     However, as to forty-seven[6] of the forty-nine pages that were withheld in full, <u>see</u>

<u>generally</u> Def.'s Not., Ex. 3 (<u>Vaughn</u> Index), a closer question is presented as to whether the

defendant has satisfied his segregability obligations.  To justify the withholding of these pages in

full, the defendant merely invokes the deliberative process privilege or the self-audit/evaluation

privilege[7] as justification for withholding the document in full, without describing the factual

---

[6] As to the two pages withheld from the "[p]re-final draft press release regarding a review of the Spiritual Ministry Department at [the] NIH," Def.'s Mot., Ex. 3 (<u>Vaughn</u> Index) at 3, the Court has already concluded that the defendant provided sufficient information for the Court to conclude that they were properly withheld in full pursuant to the deliberative process privilege, <u>see</u> Part III.C, <u>supra.</u>

[7] The defendant invokes the self-audit/evaluation privilege regarding his withholding of four pages in full, <u>see</u> Def.'s Not., Ex. 3 (<u>Vaughn</u> Index) at 6, and invokes the deliberative process privilege regarding his withholding of the remaining forty-seven pages in full, <u>see</u> <u>id.</u>, Ex. 3 (<u>Vaughn</u> Index) at 3, 5, 6, 8, 11.

information withheld with the otherwise requisite level of detail, <u>see</u> <u>id.</u>, Ex. 3 (<u>Vaughn</u> Index) at 3, 5, 6, 8, 11.   Instead of describing the factual information withheld, the defendant merely states that "factual information [was] part of the deliberative information."  <u>E.g.</u>, <u>id.</u>, Ex. 3 (<u>Vaughn</u> Index) at 3.

"While agency affidavits must be reasonably detailed, non-conclusory[,] and submitted in good faith, they are also 'accorded a presumption of good faith,' forcing a FOIA plaintiff to rebut agency affidavits with something more than pure speculation."  <u>Nance v. Fed. Bureau of Investigation</u>, 845 F. Supp. 2d 197, 203 (D.D.C. 2012) (quoting <u>SafeCard Servs., Inc. v. Secs. & Exchange Comm'n</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).   "The quantum of evidence required to overcome that presumption is not clear."  <u>Sussman v. U.S. Marshals Serv.</u>, 494 F.3d 1106, 1117 (D.C. Cir. 2007).   Although "in the absence of clear evidence to the contrary, courts [generally] presume that [government officers] have properly discharged their official duties," <u>id.</u> (quoting <u>United States v. Chem. Found., Inc.</u>, 272 U.S. 1, 14–15 (1926)), "'[g]iven [the] FOIA's pro-disclosure purpose,' a less stringent standard whereby a requester need only 'produce evidence that would warrant a belief by a reasonable person' 'is more faithful to the statutory scheme'" in the context of determining whether agencies have "complied with the obligation to disclose reasonably segregable material," <u>id.</u> (first alteration in original) (quoting <u>Nat'l Archives & Records Admin. v. Favish</u>, 541 U.S. 157, 174 (2004)).   "If the requester successfully rebuts this presumption, the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld."  <u>Id.</u>

Here, the plaintiff argues that "[i]t is inconceivable, for example, that a draft press release, an email attachment, an Action Plan chart, a Power[]Point presentation, a draft review report, or other such documents could contain <u>zero</u> factual information that could be reasonably

segregated from any truly deliberative material." Pl.'s Reply at 14. However, "[t]he plaintiff's

speculation that the documents contain segregable information is plainly insufficient to rebut the

presumption that the [defendant's] [ ] declaration[s] and [ ] Vaughn [i]ndex were prepared and

submitted in good faith." Scudder v. Cent. Intelligence Agency, 254 F. Supp. 3d 135, 145

(D.D.C. 2017); see Odland v. Fed. Energy Reg. Comm'n, 34 F. Supp. 3d 3, 19 (D.D.C. 2014)

("[The agency's declarant's] [d]eclarations are entitled to a presumption of good faith. [The]

[p]laintiffs' mere speculation that segregable factual data is contained in draft [agency] orders is

insufficient to rebut this presumption."). Because the plaintiff has not provided the Court with

any reason to question the defendant's representations, and the defendant

> describ[ed] the [withheld information] in general terms, invoke[d] the deliberative
> process privilege, and state[d] that the agency conducted a line-by-line review of
> the [withheld information] to ensure that it contained no segregable, nonexempt
> information[,] [and] [ ] further state[d] that any "purely factual" portions of the
> [withheld information] could not be extracted[,]

Anguimate, 918 F. Supp. 2d at 22; see Def.'s Not., Ex. 3 (Vaughn Index) at 3, 5, 6, 8, 11

(providing a "[d]escription of [w]ithheld [m]aterial"); id., Ex. 3 (Vaughn Index) at 3, 5, 6, 8, 11

(invoking the deliberative process privilege); 2d Garcia-Malene Decl. ¶ 32 (stating that the

defendant "conducted a line-by-line review of all of the withheld information to ensure that it

contained no segregable, nonexempt information"); id. ¶ 33 (stating that, "[w]ith respect to all of

the information withheld, every page containing withheld information was reviewed line-by-line

and no reasonably segregable, nonexempt information was withheld from [the] [p]laintiff"), the

Court concludes that the defendant has "provid[ed] the Court with the minimum information

needed . . . to ensure that [the withheld information] contained no segregable, nonexempt

information," Heffernan, 317 F. Supp. 3d at 133 (quoting Anguimate, 918 F. Supp. 2d at 22), and

that the defendant has therefore complied with his segregability obligations under the FOIA, see

Anguimate, 918 F. Supp. 2d at 22 (deeming a declaration stating that "[a]ll responsive documents . . . received a line-by-line examination in an effort to identify all reasonably segregable, unprivileged, nonexempt portions for release to the request" and that the withheld "document contain[ed] factual matter that c[ould] [not] be severed from its context and [was] exempt from disclosure pursuant to Exemption 5 of the FOIA" "sufficient to discharge the agency's segregability obligations").

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the defendant has satisfied his FOIA obligations and that he is entitled to summary judgement.  Accordingly, the Court grants the defendant's renewed motion for summary judgment and denies the plaintiff's renewed cross-motion for summary judgment.[8]

**SO ORDERED** this 16th day of October, 2019.

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.